**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

GEORGE ANTHONY GUTIERREZ,

                              Plaintiff

                - v -                                              Civil No. 9:10-CV-0488
                                                                             (FJS/RFT)
DEBORAH SCHULT, *Warden, FCI Ray Brook*;
KEVIN HAYES, *Counselor, FCI Ray Brook*;
JOHN DOE, *Correction Officer*,

                              Defendants.

**APPEARANCES:**                                    **OF COUNSEL:**

GEORGE A. GUTIERREZ
43840-080
Plaintiff, *Pro Se*
FCI Petersburg Virginia
P.O. Box 1000
Petersburg, VA 23804

HON. RICHARD S. HARTUNIAN                     CHARLES E. ROBERTS
Office of the United States Attorney          Assistant United States Attorney
100 South Clinton Street
P.O. Box 7198
Syracuse, NY 13261

**RANDOLPH F. TREECE**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER

*Pro se* Plaintiff George Anthony Gutierrez filed this civil rights action, pursuant to *Bivens v. Six*

*Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) ("Bivens"), against

Deborah Schult, Kevin Hayes, and an unknown Correction Officer (hereinafter "Doe Defendant"),

alleging that the Defendants violated his Fifth Amendment right to Due Process[1] and his Eighth

---

[1] Guitierrez raised for the first time in his Amended Complaint that the Defendants deprived him of his Due Process rights under the Fifth Amendment without providing any specific facts other than concluding that they "willingly refuse to perform their fiduciary duty[.]" Dkt. No. 7, Am. Compl. at pp. 5-6.

Amendment right to be free from cruel and unusual punishment during and after being assaulted by inmates at FCI Ray Brook on December 6, 2009. Dkt. No. 7, Am. Compl. Namely, Plaintiff claims that Doe Defendant used excessive force against him immediately following being assaulted by a group of inmates and thus inflicted additional serious injuries. *Id.* Prior to the inmate assault, Plaintiff alleges that he had perceived being in danger of such an assault by inmates and had so advised Defendant Hayes, with the hope of being moved from this twelve-person cell. Plaintiff alleges that Hayes failed to take appropriate and timely prophylactic measures, which could have averted the inmate assault upon him. *Id.* Lastly, Plaintiff accuses Warden Schult of failing to have in place in the prison yard where the assault occurred well-trained and experienced correctional officers who could have prevented the assault.

The defendants now move for dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and in the alternative for summary judgment under Rule 56(b). Dkt. No. 18-1. The Defendants argue that Plaintiff has failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). *Id.* Plaintiff opposes the Motion and argues that he did not file administrative remedies for "'fear of retaliation' by staff at FCI Ray Brook." Dkt. No. 21, Pl.'s Opp'n to Defs.' Mot. at p. 1. For the reasons stated below, the Court recommends that the defendants' Motion be **granted**.

## I. BACKGROUND

### A. Allegations Underlying the Incident

The following facts are relayed in the light most favorable to Gutierrez as the non-moving party.[2]

_____

[2]  Rather than provide an Amended Complaint that fully complies with the Federal Rules of Civil Procedure 8 and 10 - sequentially numbered paragraphs, each limited as far as practical to a single set of circumstances - Plaintiff furnishes a detailed seamless narrative of events leading to him being assaulted on September 9. Pleading deficiencies notwithstanding, there is sufficient clarity to discern the facts and nature of his claim. Had Defendants' Motion been one solely seeking dismissal based upon this pleading, the Court would be compelled to accept the facts within the Amended Complaint as true.
(continued...)

At the time of the incident that gave rise to this action, Plaintiff was an inmate in the custody of the Federal Bureau of Prisons (BOP) at FCI Ray Brook and housed in a twelve-person cell. Am. Compl. at p. 3. On December 5, 2009, Plaintiff's cel mates, Rivera and Hazlitt, engaged in a fight with each other within the twelve-person cell. *Id*. In the end, Rivera suffered a broken jaw. *Id*. The following morning of December 6, 2009, Plaintiff contends that Rivera sought to continue the fight with Hazlitt by searching for a knife to stab Hazlitt. *Id*. at p. 4. However, once a correction officer became cognizant of Rivera's physical condition, Rivera was transferred to the Special Housing Unit ("SHU"). *Id*. That evening Plaintiff and Hazlitt, who are both white and about the same height, set out to dinner together both wearing black skull caps and green army field jackets. *Id*. On route, Plaintiff was attacked by several Puerto Rican inmates. *Id*. Plaintiff was kicked and punched all over his body and stabbed repeatedly in his head. *Id*. As a result, Plaintiff suffered a five-inch incision to the right side of his head requiring thirty staples. Dkt. No. 24, Pl.'s Ex. B. Plaintiff contends that the attack was facilitated by poor prison conditions and the absence of well-trained and experienced officers in the yard. Am. Compl. at p. 3. Because of these prevailing conditions, Plaintiff claims that the inmate assailants strategically attacked him in that area. *Id*. at pp. 3 & 4.

After the attack upon Plaintiff by the inmate assailants, Plaintiff contends that Doe Defendant struck Plaintiff in the back of his head, repeatedly slammed him to the pavement and grass, and repeatedly struck him while he was being escorted to the SHU. Am. Compl. at p. 5. Plaintiff also claims that Doe Defendant put tremendous pressure on his wrists by pulling his hands in the air while his hands were

---

[2](...continued)
    *Ashcroft v. Iqbal*, _U.S._, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *See infra* Part II.A.

behind his back, which caused him to yell out in pain and begged Doe Defendant to stop.  *Id*.

Plaintiff sued all three Defendants in both their individual and official capacities for violating his Fifth

and Eighth Amendment rights and seeks $35,000 in unspecified damages as well as an immediate transfer

to a halfway house or federal prison camp.  Am. Compl. at p. 6.

## II. DISCUSSION

### A. Standard of Review – Rule 56(b)

The Defendants have moved for dismissal of the Complaint pursuant to FED. R. CIV. P. 12(b)(6),

and in the alternative have moved for summary judgment, pursuant to FED. R. CIV. P. 56.  Dkt. No. 18-1.

In moving for summary judgment, the Defendants submitted various documents outside the pleadings on

the issue of lack of exhaustion, which have been considered by the Court.  It is within a court's discretion

to convert a motion filed under Rule 12(b) and (c) into a motion seeking summary judgment when matters

outside of the pleadings have been presented and accepted by the court.  *Baum v. Northern Dutchess

Hosp.*, 764 F. Supp. 2d 410, 416 (N.D.N.Y. Jan. 24, 2011) (citing *Aetna Cas. and Sur. Co. v. Aniero

Concrete Co., Inc.*, 404 F.3d 566 (2d Cir. 2005)) (citations omitted).  In light of this additional proof, and

because Plaintiff also had notice and an opportunity to submit his own evidence, this Court has decided

to proceed under the summary judgment standard of review.

Summary judgment is appropriate only where "there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. Rule 56(a).  The moving party

bears the initial burden through the production of admissible evidence to establish that no genuine dispute

of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  This Court must view the

evidence in the light most favorable to the party opposing the motion.  *Id*. at p. 323.

If the moving party meets this initial burden, the nonmoving party must then set forth evidence

*-4-*

demonstrating that there is a genuine issue of material fact. *Id*. at p. 324; *see also Salahuddin v. Goord*, 467 F.3d 263, 273 (2d. Cir. 2006). "Though pro se plaintiffs are entitled to special latitude when defending against summary judgment motions, they must do more than simply show that there is some metaphysical doubt as to the material facts." *Hooks v. Howard*, 2010 WL 1235236, at *2 (N.D.N.Y. Mar. 30, 2010) (quoting *Matsushita Elec. Indus. Co., Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Bald assertions, completely unsupported by evidence, will not satisfy the non-movant's burden. *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991). In order to defeat a motion for summary judgment, the nonmoving party must properly address the movant's assertion of fact, and cannot rest "merely on allegations or denials" of the facts submitted by the movant. Fed. R. Civ. P. 56(e); *see Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."). Rather, the opposing party must produce "specific facts" that influence "a reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). "This is true even when the issue is exhaustion." *White v. Ercole*, 2009 WL 602890, at *5 (S.D.N.Y. Mar. 3, 2009).

When considering a motion for summary judgment, the trial court's duty "is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, a court will grant summary judgment "only when reasonable minds could not differ as to the import of evidence." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

### B. Bivens Cause of Action

"Bivens established that the victims of a constitutional violation by a federal agent [acting under

color of federal authority] have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." *Carlson v. Green*, 446 U.S. 14, 18 (1980); *see Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971); *see also Thomas v. Ashcroft*, 470 F.3d 491, 496 (2d Cir. 2006).   A *Bivens* action is applicable for a violation of the Eighth Amendment.  *Carlson v. Green*, 446 U.S. at 18.

The Second Circuit has recognized that "*Bivens* actions are not significantly dissimilar to claims brought under §§ 1981 and 1983 in terms of the interests being protected, the relief which may be granted, and the defenses which may be asserted." *Taverez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995) (citing *Chin v. Bowen*, 833 F.2d 21, 23 (2d Cir. 1987)).   Thus it has been held that 42 U.S.C. § 1983 law is applicable to *Bivens* actions "[b]ecause the two actions share the same 'practicalities of litigation.'" *Id.* at 110 (citation omitted).  Furthermore, "[b]ecause the doctrine of respondeat superior does not apply in Bivens actions, a plaintiff must allege that the individual defendant was personally involved in the constitutional violation." *Thomas v. Ashcroft*, 470 F.3d at 496 (citation omitted)*.

### C. The PLRA Exhaustion Requirement

Plaintiff contends that Doe Defendant scared and threatened him by yelling that if he even tried to file a grievance against Doe Defendant, Doe Defendant would make sure Plaintiff gets killed.  Dkt. No. 21, Pl.'s Opp'n to Defs.' Mot. at p. 1.  Plaintiff claims that during his stay in the SHU, Lieutenant Lousey[3] referred to Plaintiff as a snitch to other inmates.  *Id*. at p. 2.  Plaintiff also asserts, without specifying the date(s), that Correction Counselor Kevin Hayes told Plaintiff that administrative remedies were a "joke" and would get lost or thrown in the trash, especially if they were against Hayes.  *Id*. at p. 1.  According to Plaintiff, in order to seek an internal or sensitive administrative remedy, he would have had to consult

---

[3] Lieutenant Lousey is not a named defendant in this action.

Hayes first.  *Id*.; Dkt. No. 23, Pl.'s Sur-Reply to Defs.' Reply at p. 1.

On June 24, 2010, while in the custody of FCI Petersburg, Plaintiff sent Warden Schult a letter regarding Lieutenant Lousey's conduct related to the December 6, 2009 assault.  Dkt. No. 21, Pl.'s Ex. A. Plaintiff also inquired about whether "street charges" would be pursued against the inmate assailants. *Id*.  In response to the complaint against the Lieutenant, Schult stated that "[c]omplaints against staff members are never ignored; however, inmates are not advised of the outcome of these investigations." *Id*.  Regarding the street charges, Schult responded in the negative stating, "[p]lease be advised that the matter was previously handled administratively and no further charges are forthcoming."   *Id*. Furthermore, on November 15, 2010, while in the custody of FCI Petersburg, Plaintiff successfully requested and obtained his medical records from FCI Ray Brook through the BOP.  Dkt. No. 24, Pl.'s Ex. B.

In their Motion, the Defendants' raise the affirmative defense that Plaintiff failed to exhaust available administrative remedies.  Under the Prison Litigation Reform Act, 42 U.S.C. § 1997(e)(a) "[n]o action shall be brought with respect to prison conditions under [section 1983], or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted."   The Supreme Court held that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004).  Prisoners must exhaust all available "administrative remedies even where the relief sought – monetary damages – cannot be granted by the administrative process." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 734 (2001)).

The Administrative Remedy Program is comprised of a four-step procedure set forth by the BOP. Inmates are required to use the Administrative Remedy program "in good faith and in an honest and straightforward manner." 28 C.F.R. § 542.11(b).  First, the inmate must submit the issue of concern informally to staff, and staff must take measures to informally resolve the issue.  *Id*. at § 542.13(a). Second, if the issue cannot be resolved informally, the inmate must submit a formal written Administrative Remedy Request, on a designated form, within twenty days of the event giving rise to the complaint.[4]  *Id*. at § 542.14(a).  If the inmate believes the issue is sensitive such that his/her safety or well-being would be placed in danger, the inmate may circumvent the initial filing at the institution by submitting the request directly to the appropriate Regional Director.[5]  *Id*. at § 542.14(d)(1).  Third, if the formal written request is denied, an unsatisfied inmate may submit an Appeal, on a designated form, to the appropriate Regional Director within twenty calendar days of the date the Warden signed the response.  *Id*. at § 542.15(a).  Fourth, an inmate may appeal a negative decision from the Regional Director to the General Counsel within thirty days of the date the Regional Director signed the response.  *Id*.  Appeal to the General Counsel is the last administrative appeal, and once exhausted legal action may commence.

The Second Circuit recognized that while PLRA's exhaustion requirements are mandatory, certain caveats may apply. *Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004) (citation omitted).  "[A] three-part inquiry is appropriate where a prisoner plaintiff seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies as required by the PLRA[.]" *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004).  First, depending on the inmate's explanation for the

---

[4] The inmate must obtain the grievance form from his/her correction counselor.  *See* 28 C.F.R. § 542.13(c)(1).

[5] The inmate must clearly write "sensitive" on the request, and further explain the reason for not submitting the request at his/her institution.  *See* 28 C.F.R. § 542.14(d)(1).  "If the Regional Administrative Remedy Coordinator agrees that the [r]equest is sensitive, the [r]equest shall be accepted.  Otherwise, the [r]equest will not be accepted, and the inmate shall be advised in writing of that determination, without a return of the [r]equest."  *Id*.

alleged failure to exhaust, the court must ask whether such procedures were actually "available" to the

prisoner. *Abney v. McGinnis*, 380 F.3d at 667.  Second, "[t]he court should also inquire as to whether the

defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve

it . . . or whether the defendants' own action inhibiting the inmate's exhaustion of remedies may estop one

or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Hemphill v. New*

*York*, 380 F.3d at 686 (citing *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004) & *Ziemba v. Wezner*,

366 F.3d 161, 163 (2d Cir. 2004)).  Third, the Second Circuit has found that "there are certain 'special

circumstances' in which . . . the prisoner's failure to comply with administrative procedural requirements

may nevertheless have been justified." *Giano v. Goord*, 380 F.3d 670, 676 (2d Cir. 2004).  "The effect

of such justification is that, though the administrative remedies are no longer available for reasons of

timing or other procedural restrictions, such restrictions cannot serve to keep the plaintiff's suit from

proceeding." *Id.*

### 1. Whether administrative remedies were "available" to Plaintiff

The Second Circuit has further held that the behavior of a defendant may render administrative

remedies unavailable.  *Abney v. McGinnis*, 380 F.3d at 686.  The test for determining whether

administrative remedy procedures were available must be an objective one that examines whether "a

similarly situated individual of ordinary firmness" would have deemed them available. *Hemphill v. New*

*York*, 380 F.3d at 688 (quoting *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003)).  "[T]hreats or other

intimidation by prison officials may well deter a prisoner of 'ordinary firmness' from filing an internal

grievance, but not from appealing directly to individuals in positions of greater authority within the prison

system, or to external structures of authority such as state or federal courts." *Id*.

In the present case, Plaintiff alleges that a threat of death and retaliation made by Doe Defendant

*-9-*

and Kevin Hayes rendered his ability to pursue his grievance inherently unavailable.  Dkt. No. 21, Pl.'s

Opp'n to Defs.' Mot. at p. 1.  Plaintiff further claims that in order to initiate an administrative remedy, he

would have had to first consult Defendant Hayes, who, pursuant to 28 C.F.R. § 542.13(c)(1), Plaintiff

must obtain the grievance form from.  *Id.*  The Defendants respond by arguing that even if staff at FCI Ray

Brook intimidated Plaintiff into not exhausting the administrative remedy process as required, Plaintiff

could have circumvented the requirement that he first file at the institution by initiating his request for

remedy with the Regional Office under 28 C.F.R. § 542.13(d)(1).  Dkt. No. 22, Defs.' Reply to Pl's Opp'n

at p. 1.  The Defendants also assert that Plaintiff has not utilized the Administrative Remedy process as

to the issues before the Court.  *Id.*

Administrative remedies were originally available to Plaintiff at FCI Ray Brook, as the BOP

provided grievance procedures that he could have utilized at the time the assault occurred.  Plaintiff was

also aware of the administrative remedy process.[6]  However, the objective "ordinary firmness" test for

assessing availability may show that Plaintiff, while in the custody of FCI Ray Brook, reasonably thought

the grievance procedures were unavailable to him given the alleged threats of violence and retaliation by

Doe Defendant and Hayes.  In order for Plaintiff to have submitted an "internal" administrative remedy

request to FCI Ray Brook or a "sensitive" remedy request directly to the Regional Director, he would have

had to request the grievance form from Hayes, pursuant to 28 C.F.R. § 542.13(c)(1).  However, while it

is plausible that administrative remedies were reasonably unavailable at FCI Ray Brook, once Plaintiff

was transferred to FCI Petersburg, such impediment was no longer present.

Plaintiff was transferred to FCI Petersburg after the December 2009 assault, and before he signed

his initial Complaint on April 15, 2010.  As long as a prisoner is in the custody of the agency against

---

[6] On separate occasions Plaintiff utilized the Federal Bureau of Prisons' Administrative Remedy Program.  Dkt. No. 18-3.
Magnusson Decl., Ex. A.

which he has grievances, he is required to use available grievance procedures. *White v. Ercole*, 2009 WL 602890, at * 5 (S.D.N.Y. Mar. 3, 2009) (ruling against a prisoner-plaintiff's argument that his transfer from one state prison to another gave him a valid excuse for his failure to exhaust administrative remedies) (citing *Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2004)). In this case, Plaintiff remained in the custody of the BOP when he was transferred from FCI Ray Brook to FCI Petersburg, which consequently forecloses his excuse for failing to exhaust. In fact, by writing a letter to Warden Schult of FCI Ray Brook, Plaintiff had the opportunity to complain about the actions of the Defendants herein, but failed to mention them. Dkt. No. 21, Pl.'s Opp'n to Defs.' Mot. at p. 2; Dkt. No. 21, Ex. B. Instead, Plaintiff chose to only inquire about retribution against his FCI Ray Brook inmate assailants and Lieutenant Lousey. *Id.* The letter Plaintiff forwarded to Warden Schult and Plaintiff's request for his medical records, both submitted while Plaintiff was in FCI Peterburg's custody, serve as a direct contradiction to Plaintiff's contention that administrative remedies were unavailable to him.

Accordingly, Plaintiff has failed to produce evidence to withstand summary judgment, as Plaintiff has not set forth any evidence supporting his argument of excusal for failing to exhaust the administrative remedies available to him at FCI Petersburg.

### 2. Whether the Defendants' exhaustion defense is subject to estoppel

This Court must now consider whether the Defendants' actions estop them from asserting the affirmative defense of failure to exhaust. "[A] plaintiff's failure to exhaust all administrative remedies may be excused on the grounds of estoppel where the plaintiff was, misled, threatened, or otherwise deterred from fulfilling the requisite procedures." *Winston v. Woodard*, 2008 WL 2263191, at *9 (S.D.N.Y. May 30, 2008). The Second Circuit has recognized that "defendants' actions may estop them from raising non-exhaustion as a defense . . . [where] each prisoner alleged that defendants took

*-11-*

affirmative action to prevent him from availing himself of grievance procedures." *Ruggiero v. County of Orange*, 467 F.3d 170, 178 (2d Cir. 2006) (citing *Ziemba v. Wezner*, 366 F.3d at 162 (beating, threatening and denying grievance forms and writing implements) & *Hemphill v. New York*, 380 F.3d at 687 (threats of retaliation)).

In this case, Plaintiff claims that threats of retaliation from Doe Defendant and Hayes justify his failure to exhaust his administrative remedies. Where a plaintiff does not contend in his opposition papers that defendants should be estopped from raising the issue of exhaustion, the claim should be deemed unexhausted and dismissed. *Hooks v. Howard*, 2010 WL 1235236, at \*10 (N.D.N.Y. Mar. 30, 2010). Here, Plaintiff does not argue that those threats estop the Defendants from raising the defense of failure to exhaust. As such, the claim should be dismissed on that basis.

Furthermore, Plaintiff has failed to put forth sufficient corroborating evidence, either direct or circumstantial, to support his claim that he failed to exhaust for fear of retaliation. First, while Plaintiff has provided some specific details of Doe Defendant's use of excessive force, he has failed, on multiple occasions, to submit the name of Doe Defendant to this Court. As such, this action cannot continue against Doe Defendant. *See infra* Part II.D. Second, Plaintiff has failed to specify the date(s) of Hayes' alleged misconduct and the details of the particular incidents of threats. Plaintiff simply states that Hayes consistently ignored his requests for cell transfer, and assured him that administrative remedies were a joke and that they would be thrown in the trash. Dkt. No. 21, Pl.'s Opp'n to Defs.' Mot. at p. 1. Plaintiff has also failed to specify whether Hayes' threat regarding administrative remedies were related to the December 6, 2009 assault. Third, Plaintiff has not alleged any direct misconduct by Schult, related to the December 6, 2009 assault that could conceivably justify his fear of retaliation. Moreover, Plaintiff has failed to allege any facts related to Schult that would give rise to estoppel. In light of Plaintiff's failure

to set forth specific facts, this Court finds, taking the evidence in the light most favorable to Plaintiff, that

he has not put forth sufficient evidence to sustain his burden of demonstrating estoppel.

### 3. Whether there are "special circumstances" justifying Plaintiff's failure to exhaust

In addition, this Court must determine whether 'special circumstances' exist, justifying "the

prisoner's failure to comply with administrative procedural requirements." *Giano v. Goord*, 380 F.3d at

676. Justification is determined by examining the "circumstances which might understandably lead

usually uncounselled prisoners to fail to grieve in the normally required way." *Id*. at p. 678. Such

circumstances may be found to exist where "prison officials inhibit an inmate's ability to utilize

administrative grievance procedures;" where the prisoner obtained a favorable disposition of his

grievance, but the time to file an administrative appeal had expired and the relief the prisoner had won was

not forthcoming; and where "the prisoner had undertaken all possible appeals but the prison authorities

failed to respond within [the] required time period." *Id*. at p. 677.

Here, Plaintiff did not remain in the custody of FCI Ray Brook after the assault and alleged

misconduct by the prison employees. If Plaintiff had remained in FCI Ray Brook's custody after the

assault this Court may have found that special circumstances existed justifying Plaintiff's failure to

exhaust. However, as aforementioned, Plaintiff was transferred to FCI Petersburg after the incident,

effectively precluding the possibility of retaliation from FCI Ray Brook employees. Therefore, Plaintiff's

ability to utilize the administrative grievance procedures was not inhibited. In addition, once Plaintiff was

in the custody of FCI Petersburg he never filed an administrative grievance regarding the alleged

misconduct of the Defendants in this action. Dkt. No. 18-3, Magnusson Decl. at p. 2.

Accordingly, Plaintiff has again failed to produce evidence to withstand summary judgment, as

Plaintiff has not set forth any evidence supporting his reason for failing to exhaust administrative remedies

based on the existence of special circumstances.

### D. Doe Defendant

Plaintiff filed his civil rights Complaint on April 26, 2010, against three Defendants, Doe Defendant included. Dkt. No. 1. Plaintiff also submitted a Motion to Proceed *In Forma Pauperis* (IFP). Dkt. No. 2, IFP App. On June 23, 2010, this Court reviewed those filings and granted Plaintiff permission to proceed with this matter IFP. Dkt. No. 5. However, because Plaintiff asserted claims against Doe Defendant, who was not identified by name in the Complaint, this Court directed Plaintiff, in order to avoid dismissal, to take reasonable steps through discovery to ascertain the name of the Defendant. Dkt. No. 5, Order, dated June 23, 2010.

On July 12, 2010, Plaintiff filed an Amended Complaint wherein he amplified some of the factual allegations, and instead of identifying "John Doe" by his surname, requested that "John Doe" be referred to as "unknown correctional officer." Dkt. No. 7, Am. Compl. On September 8, 2010, by order of this Court, Plaintiff was "advised that the United States Marshal cannot effect service on a 'John Doe' Defendant." Dkt. No. 14, Order, dated Sept. 8, 2010. Plaintiff was again encouraged to take reasonable steps to ascertain the Defendant's identity and granted permission to then "file a motion to amend his Amended Complaint and seek leave of the Court to add such individual, by name, to this lawsuit." *Id*. at p. 3. Plaintiff was "further advised that if [the Defendant was] not timely served, [the] action [would] be dismissed as against him." *Id*. Because of Plaintiff's failure to timely obtain the Defendant's identity, Doe Defendant is dismissed from this action.

Nevertheless, because none of the exceptions outlined in *Hemphill v. New York* apply to the facts of this case, this Court finds that Plaintiff has failed to exhaust his administrative remedies. Accordingly, the Defendants' Motion for Summary Judgment should be **granted** on this basis.

### III. CONCLUSION

For the reasons stated therein, it is hereby

**RECOMMENDED**, that the Defendants' Motion for Summary Judgment (Dkt. No. 18) be **granted** and this case be **dismissed**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, & 6(a).

Date:    September 21, 2011
         Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge